IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| KASIE STEVENS-BRATTON, individual and on behalf of all other similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 2:15-cv-2472-STA-tmp |
| v. ) ) | |
| TRUGREEN, INC., ) ) | |
| Defendant. ) | |

---

**ORDER DENYING MOTION TO CERTIFY CLASS
AND GRANTING MOTION TO COMPEL ARBITRATION
AND ORDER OF DISMISSAL**

---

Plaintiff Kasie Stevens-Bratton filed this purported class action against Defendant TruGreen, Inc., for allegedly violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff has moved for class certification (ECF No. 3), and Defendant has moved to compel arbitration or, in the alternative, to stay the litigation. (ECF No. 24.) The parties have fully briefed the Court. For the reasons set forth below, Plaintiff's motion is **DENIED**, and the portion of Defendant's motion seeking to compel arbitration is **GRANTED**.

The TCPA was enacted to regulate the growth of the telemarketing industry based on a determination by Congress that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy."[1] The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

---

[1] Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (Congress enacted the TCPA to protect individual consumers from receiving intrusive and unwanted telecommunications).

1

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."[2] The TCPA provides a private cause of action to persons who receive such calls.[3]

The TCPA also makes it unlawful for any entity to make more than one call in a twelve-month period to any number that is registered with the National Do-Not-Call Registry or the entity's internal do-not-call list.[4] A listing on the National Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."[5] Internal requests must be honored for five years.[6] Persons receiving calls in violation of this portion of the TCPA are also provided with a private cause of action.

TruGreen is a national lawn care service provider headquartered in Memphis, Tennessee. (Cmplt. para. 3, 12, ECF No. 1.) TruGreen engages in telemarketing to reach potential

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also* 47 C.F.R. § 64.1200(f)(2) ("The terms automatic telephone dialing system and autodialer mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.").

[3] 47 U.S.C. § 227(b)(3).

[4] 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). FCC regulations require that entities that use telemarketing maintain internal do-not-call lists.

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

[5] *Id.*

[6] 47 C.F.R. § 64.1200(d)(6).

2

customers. (*Id.* para. 13.) Plaintiff alleges that she has received numerous telemarketing calls from TruGreen on her cell phone. (*Id.* para. 18.) When Plaintiff answered the calls, there was a lengthy pause and a click. Plaintiff had to say "hello" multiple times before a person came on the line, which indicated to her that the call was made using an automatic telephone dialing system ("ATDS"). (*Id.* para. 19.) The calls were allegedly made on behalf of TruGreen in an attempt to persuade Plaintiff to purchase lawn care services. (*Id.* para. 20.) Plaintiff requested on several different calls that TruGreen stop calling her. (*Id.* para. 21.) However, Plaintiff continued to receive calls on her cellular telephone from, or on behalf, of TruGreen. (*Id.* para. 22.) Plaintiff received these calls despite the fact that she had listed her telephone number on the National Do-Not-Call Registry on November 9, 2013. (*Id.* para. 24, 25.)

Plaintiff contends that TruGreen's actions are in violation of the TCPA. She alleges that other consumers have received similar TCPA violative calls from TruGreen (*Id.* para. 29 – 35), and, therefore, the Court should certify a class and appoint her as the class representative. (Mot. to Certify Class, ECF No. 3.)

TruGreen has responded with a Motion to Compel Arbitration or, in the Alternative, to Stay Litigation. (ECF No. 24.) According to TruGreen, Plaintiff is one of its former customers, and, on May 15, 2013, she executed a Service Agreement for a Tru maintenance package. (Service Agreement, ECF No. 24-2.) Plaintiff marked a box directly above her signature stating, "My agreement is subject to the terms and conditions on the reverse side." Below Plaintiff's signature, in bold type face, the Service Agreement states, "**The Terms and Conditions on the reverse side, including the mandatory arbitration provision, are part of this agreement**." (*Id.* p. 2.) On the reverse side of the Service Agreement, the Additional Terms and Conditions section includes consent for TruGreen to contact Plaintiff on her cell phone using an ATDS, a

mutual agreement to arbitrate any dispute between Plaintiff and TruGreen, and a class action waiver:

>**CONTACT INFORMATION.** If I have provided TruGreen with my cell phone number, I agree that TruGreen may contact me on that number using an automatic telephone dialing system or prerecorded or artificial voice to discuss my account and lawn care services, including current and possible future services, customer service and billing. I understand that providing my cell phone number is not required to purchase TruGreen's services and that I may revoke this permission at any time.
>
>**MANDATORY ARBITRATION**. Purchaser and TruGreen agree that any claim, dispute or controversy ("Claim") between them or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement including but not limited to any tort or statutory Claim shall by resolved by neutral binding arbitration by the American Arbitration Association ("AAA"), under the Rules of the AAA in effect at the time the Claim is filed ("AAA Rules"). . . . Each party shall be responsible for paying its own attorneys' fees, costs and expenses, the arbitration fees and arbitrator compensation shall be payable as provided in the AAA Rules. However, for a Claim of $15,000 or less brought by Purchaser in his/her/its individual capacity, if Purchaser so requests in writing, TruGreen will pay Purchaser's arbitration fees and arbitrator compensation due to the AAA for such Claim to the extent they exceed any filing fees that the Purchaser would pay to a court with jurisdiction over the Claim. The arbitrator's power to conduct any arbitration proceeding under this arbitration agreement shall be limited as follows: any arbitration proceeding under this agreement will not be consolidated or joined with any arbitration proceeding under any other agreement, or involving any other property or premises, and will not proceed as a class action or private attorney general action. The foregoing prohibition on consolidated, class action and private attorney general arbitrations is an essential and integral part of this arbitration clause and is not severable from the remainder of the clause. . . . This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. 9 U.S.C. Sections 1-16. . . . Neither party shall sue the other party with respect to any matter in dispute between the parties other than for enforcement of this arbitration agreement or of the arbitrator's award. **THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE TO HAVE ANY DISPUTES DECIDED THROUGH ARBITRATION.**
>
>**CLASS ACTION WAIVER**. Any Claim must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar basis ("Class Action"), and

the parties expressly waive any ability to maintain any Class Action in any forum whatsoever. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action. Nor shall the arbitrator have authority to make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only in a court of competent jurisdiction and not by an arbitrator. **THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION.**

(*Id.* p. 2.)

TruGreen argues that Plaintiff should be ordered to arbitrate her individual claims against TruGreen in accordance with the terms of the mandatory arbitration provision and class action waiver contained in the Service Agreement as quoted above. Plaintiff has responded that the telemarketing calls were made after the termination of her contract with TruGreen, and the arbitration clause does not apply to post-termination calls.[7]

At issue is the language in the Service Agreement: "I agree that TruGreen may contact me on that number using an automatic telephone dialing system or prerecorded or artificial voice to discuss my account and lawn care services, including current and **possible future services**, customer service and billing."[8] The question for the Court is whether the arbitration clause survived the termination of Plaintiff's contract with TruGreen based on the language giving TruGreen the right to contact Plaintiff using an ATDS to discuss "possible future services." The Court finds that it does.

---

[7] Plaintiff does not dispute that, should this Court compel arbitration, the arbitration must proceed individually rather than as a class.

[8] (Service Agreement p. 2 (emphasis added), ECF No. 24-2.)

The Federal Arbitration Act states that a "written provision" in a contract providing for "settle[ment] by arbitration" of "a controversy ... arising out of" that "contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[9] Arbitration is a matter of "consent, not coercion."[10] The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[11] "[A]ny doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that [an] arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[12] "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."[13]

The parties agree that the Sixth Circuit uses four factors to determine when to grant a motion to compel arbitration: "(1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration,

---

[9] 9 U.S.C. § 2.

[10] *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 605 (2010) (internal quotation marks omitted).

[11] *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when interpreting arbitration agreements, courts "should apply ordinary state-law principles that govern the formation of contracts").

[12] *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007).

[13] *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

whether the nonarbitrable claims should be stayed pending arbitration."[14] The parties also agree that the issue presented by TruGeen's motion involves the second factor - whether conduct that occurred after the termination of the contract is within the scope of the expired contract's arbitration clause. Thus, if the arbitration clause survived the termination of the Service Agreement and if the clause is not unconscionable, then TruGreen's motion should be granted.

In *Huffman v. Hilltop Companies*, LLC,[15] the Sixth Circuit Court of Appeals explained when an arbitration clause survives the termination of an agreement.

> Central to the resolution of this issue is the strong federal policy in favor of arbitration. In *Litton Financial Printing Division, Litton Business Systems, Inc. v. NLRB*, the Supreme Court recognized a "presumption in favor of post-expiration arbitration of matters unless negated expressly or *by clear implication* [for] matters and disputes arising out of the relation governed by contract." 501 U.S. 190, 204, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (emphasis added) (internal quotation marks and citation omitted). This court has since observed that the need for an arbitration provision to have post-expiration effect is intuitive, because if "the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Zucker v. After Six, Inc.*, 174 Fed.Appx. 944, 947–48 (6th Cir. 2006).
>
> The Supreme Court in *Litton* went on to note that, with respect to agreements containing broadly-worded arbitration clauses, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 501 U.S. at 209, 111 S.Ct. 2215 (internal quotation marks and brackets omitted). Under this circuit's precedent, the arbitration clause in this case is fairly described as being broadly-worded because its language indicating that "[a]ny Claim arising out of or relating to this Agreement, or the breach thereof" will be submitted to arbitration is not only far-reaching but also very similar to other arbitration clauses that this court has described as "broad." *See, e.g., Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 625 (6th Cir. 2004) (describing as "broad" a provision providing that "[a]ny dispute arising out of the interpretation,

---

[14] *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (*citing Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

[15] 747 F.3d 391 (6th Cir. 2014).

performance or alleged breach of this agreement, shall be submitted to arbitration").

> The fact that the plaintiffs face a difficult task in rebutting the strong presumption in favor of arbitration "by clear implication" and with "positive assurance" is further confirmed by controlling precedent. *See Litton*, 501 U.S. at 204, 209, 111 S.Ct. 2215. This court examines "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving *any doubts as to the parties' intentions in favor of arbitration*." *Nestle*, 505 F.3d at 503 (emphasis added); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration."). "Likewise, any ambiguities in the contract ... should be resolved in favor of arbitration." Id. at 714 (internal citations omitted). "Moreover, '[i]n the absence of any express provision excluding a particular grievance from arbitration ... *only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail*.'" *Nestle*, 505 F.3d at 503 (emphasis added) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).[16]

The *Huffman* Court acknowledged, however, that "[a]lthough the plaintiffs' task is difficult, it is not impossible."[17]

Plaintiff urges the Court to apply the test set forth in *South Cent. Power Co. v. IBEW Local Union 2359*,[18] as to when a dispute falls within the scope of an arbitration clause in an expired contract: (1) When it involves facts and occurrences that arose before expiration of the contract; (2) When an action taken after expiration of the contract infringes a right that accrued or vested under the agreement; or (3) When under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.[19] Using the

---

[16] *Huffman,* 747 F.3d at 395.

[17] *Id.*

[18] 186 F.3d 733, 740 (6th Cir. 1999).

[19] *Id.* at 738-39 (citing *Litton*, 501 U.S. at 205-06).

8

*South Central* test still leads to the conclusion that the arbitration clause survived the termination of Plaintiff's agreement with Tru-Green.

The facts in the present case are similar to those in *South Central* in that "some, but not all, of the facts and occurrences [telemarketing calls] arose prior to the expiration of the Old Agreement."[20] The agreement allowed TruGreen to call Plaintiff about "possible future services." Therefore, the right to do so accrued or vested under the agreement. And, using "normal principles of contract interpretation" leads to a finding that the "disputed contractual right," i.e., arbitration, survives the expiration of the termination of the Service Agreement.

Plaintiff argues that, during the life of the Service Agreement, she "consented to receive robocalls only with respect to services that were or could be provided under the contract. She did not consent to receive robocalls placed to induce her to enter into a different contract."[21] She maintains that the phrase "including current and possible future services, customer service and billing" modifies "my account and lawn care services" and, thus, "future services" are "expressly limited to any services that Ms. Stevens-Bratton could receive under her contract but was not currently receiving. Indeed, the contract specifically contemplates a customer purchasing additional services 'under th[e] contract" which would continue from year to year until the customer cancelled it.'"[22]

However, this Court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation"[23] that calls could be made concerning "future services" after the termination of the Service Agreement. The statement can reasonably be interpreted to mean that

---

[20] *Id.* at 739.

[21] (Response p. 11-12, ECF No. 39.)

[22] (*Id.*)

[23] *Litton*, 501 U.S. at 209.

9

calls could be made concerning current and future lawn care services during the pendency of Plaintiff's account **and** future lawn care services after the termination of her account. The fact that "possible future services" includes post-contractual services makes sense when read in conjunction with the Agreement's arbitration provision covering disputes "relating to . . . the relationships which result from this agreement."[24] Plaintiff's interpretation would require this Court to write in limiting terms that do not exist in the Agreement – a result that is contrary to normal principles of contract interpretation.

The parties specifically agreed that "any claim, dispute or controversy …between them or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement" would be subject to the arbitration clause.[25] As noted in *Whaley v. T-Mobile, USA, Inc.*,[26] "[s]imilar clauses calling for arbitration of disputes relating to an agreement have been deemed to be broadly written." Accordingly, the Court concludes that the present clause is broadly written. Once an arbitration clause is deemed to have been broadly written, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim

---

[24] (Service Agreement, ECF No. 24-2.)

[25] (*Id.*)

[26] 2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) (citing *Electrolux Home Products, Inc. v. Mid-South Electronics Inc.*, 2008 WL 3493466 (E.D. Ky. Aug. 11, 2008) (construing clause requiring arbitration if a dispute "relates to this agreement" as being broadly written); *Glazer v. Lehman Bros.*, Inc., 394 F.3d 444, 448–450 (6th Cir. 2005) (finding that clause requiring arbitration of " '[a]ny controversy arising out of or relating to" an agreement to be broadly written); *Ferro Corp. v. Garrison Industries*, Inc., 142 F.3d 926, 937 (6th Cir.1998) (deeming "conspicuously broad" an arbitration clause mandating arbitration for "'[a]ll controversies and claims arising out of or relating to this Agreement'").

from arbitration will remove the dispute from consideration by the arbitrators."[27] There is no such provision in this case.

The *Whaley* Court relied on *Fazio*'s holding that "[w]hen trying to determine if a dispute falls within an arbitration clause "[a] proper method of analysis ... is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement."[28] In *Whaley*, the plaintiff alleged that T-Mobile used an ATDS to call plaintiff, a T-Mobile customer, regarding a debt purportedly owed by another individual.[29] T-Mobile moved to compel arbitration under its contract which contained both an arbitration clause and a consent provision to be contacted using an ATDS.[30] The district court adopted the report and recommendation of the magistrate judge, holding that the action could not "be properly maintained without reference to the contract at issue" because, as in this case, "T–Mobile relie[d] upon a clause of the agreement as its defense to plaintiff's claim."[31]

---

[27] *Watson Wyatt & Co.*, 513 F.3d at 650.

[28] 2013 WL 5155342 at *3 (citing *Fazio*, 340 F.3d at 396). *See also Nestle Walters North Am. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2003) (in deciding whether an issue is within the scope of an arbitration agreement courts should "ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." (citing *Fazio*)).

Plaintiff claims that this is not the holding in *Fazio* but merely "part of a discussion of general principles from different Circuits." (Response p. 14, ECF No. 39.) To the contrary, the *Fazio* Court clearly stated that a "proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." 340 F.3d at 395.

[29] *Id.* at *1.

[30] *Id.* at *1, 3.

[31] *Id.* at *4.

The court's "duty [wa]s not to determine whether T–Mobile's defense [wa]s meritorious."[32] Instead, the court's only role was to "determine if plaintiff's claim may be resolved without referring to the agreement between plaintiff and T–Mobile."[33] Because the claim could not be resolved without reference to the agreement, the court ordered it to be arbitrated. Likewise, in this case, Plaintiff's claims "cannot be resolved without referring to the [Service] Agreement," and it will be necessary to examine the agreement to resolve that claim and TruGreen's affirmative defense of consent regardless of the merits of the claim or the defense.[34]

Next, Plaintiff contends that the arbitration clause is unconscionably broad and should be stricken because the clause pertains to any "claim, dispute or controversy" and is not limited to claims related to the contract or any specific course of conduct. The Supreme Court has held that, under the FAA, state law contract defenses such as unconscionability may be applied by courts to invalidate arbitration agreements.[35] The party asserting unconscionability bears the burden of proving this defense.[36] The issue of whether an arbitration clause is unconscionable is a question of law.[37]

---

[32] *Id.* at *3.

[33] *Id.*

[34] *Id.*

[35] *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

[36] *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659-60 (6th Cir. 2003).

[37] *See Taylor v. Butler*, 142 S.W.3d 277, 284–85 (Tenn. 2004)(*citing Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 435 n. 12 (6th Cir. 1983)).

"Procedural unconscionability is usually some impropriety during the process of forming the contract that deprives a party of a meaningful choice."[38] Plaintiff has offered no evidence, nor does she argue, that there was any impropriety when forming the contract.

Enforcement of a contract is refused on grounds of substantive unconscionability when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and [when] the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other."[39] An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice.[40] Again, Plaintiff has offered no evidence nor made any specific argument as to substantive unconscionability other than her "unconscionably broad" argument.

As noted by Tru-Green, courts in the Sixth Circuit routinely enforce arbitration clauses similar to the one in the present case, including cases involving TCPA claims.[41] In *Bibee v. Credit One Bank*,[42] the arbitration provision provided:

---

[38] *Byrd v. SunTrust Bank*, 2013 WL 3816714 at *7 (W.D. Tenn. July 22, 2013) (quoting *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009)).

[39] *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984) (*quoting In re Friedman*, 64 A.D.2d 70, 407 N.Y.S.2d 999 (1978)); *see also Aquascene, Inc. v. Noritsu Am. Corp.*, 831 F. Supp. 602 (M.D. Tenn. 1993).

[40] *Haun*, 690 S.W.2d at 872. For example, an arbitration agreement in which the drafter of the agreement reserves the right to a judicial forum but limits the consumer to arbitration of his claims is "unconscionable and oppressive" because it is "one-sided and unreasonably favorable to the drafter." *Taylor*, 142 S.W.3d at 285–86. *See also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 977 (6th Cir. 2007).

[41] *See, e.g., Andrews*, 596 F. App'x at 370 ("The broad language of the arbitration provision ('any controversy between you [Ameritrade] and me [client or his agent] shall be arbitrated . . .' covers the dispute . . ."); *Narula v. Delbert Servs. Corp.*, 2014 WL 3752797, at *1-3 (E.D. Mich. July 30, 2014) (enforcing arbitration agreement against Plaintiff for TCPA claims when Plaintiff

> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration."
> . . .
> In addition, claims subject to arbitration include claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, or any other legal or equitable ground.[43]

The Court rejected the plaintiff's unconscionability argument, holding that the arbitration agreement was valid and enforceable.[44]

As in *Bibee*, Plaintiff has not met her burden of proving unconscionability, and, therefore, the arbitration clause is valid and enforceable. The arbitration clause gives both parties the right to arbitrate their claims, each party is responsible for its own costs and attorneys' fees, and the arbitration is governed by the Rules of the American Arbitration Association.[45] There is nothing so "one-sided" or "oppressive" about the terms of the arbitration clause that would "shock the judgment of a person of common sense."[46]

The FAA directs the Court to stay an action pending arbitration; however, when all claims are within the scope of an arbitration agreement, as in the present case, and "there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is

---

agreed that "any Dispute" between the parties would be resolved by arbitration); *Price v. Taylor*, 575 F. Supp. 2d 845, 851 (N.D. Ohio 2008) ("The Agreement, without qualification, states that the parties shall resolve any claim through arbitration. [. . .] Price's claims cannot escape such encompassing language in the absence of an express or implied agreement to the contrary.").

[42] 2015 WL 5178700 (M.D. Tenn. Sept. 4, 2015).

[43] *Id.* at *1.

[44] *Id.* at *3.

[45] (Service Agreement, ECF No. 24-2.)

[46] *Haun*, 690 S.W.2d at 872.

appropriate."[47]  The Court concludes that dismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable and no purpose would be served by retaining jurisdiction and staying the action.

In summary, Plaintiff's motion for class certification is **DENIED**, Defendant Tru-Green's motion to compel arbitration is **GRANTED,** and this matter is hereby **DISMISSED**.

**IT IS SO ORDERED**.

s/ S.  Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 11, 2016.

---

[47]  *Ewers v. Genuine Motor Cars, Inc.*, 2008 WL 755268, at *7 (N.D. Ohio Mar. 19, 2008) (quoting *Arnold v. Arnold*, 920 F.2d 1269 (6th Cir. 1990)).  *See also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 & n. 21 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Gassner v. Jay Wolfe Toyota*, 2007 WL 1452240, at *3 (E.D. Mo. May 15, 2007) (When "all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action.").