# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| KASIE STEVENS-BRATTON, individual and on behalf of all other similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 2:15-cv-2472 |
| ) | Oral Argument Requested |
| v. ) ) | |
| TRUGREEN, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S DNC-RELATED CLAIMS

Plaintiff's Complaint in this case alleges six claims against TruGreen, Inc. ("TruGreen") under the Telephone Consumer Protection Act ("TCPA"). As detailed in TruGreen's previously-filed (and pending) motion for partial summary judgment, Plaintiff's first two claims must be dismissed because TruGreen did not use an automatic telephone dialing system to call her. *See* Motion, ECF No. 109. Now that discovery is closed, the undisputed material facts demonstrate that Plaintiff's remaining four claims are equally without merit and subject to dismissal with prejudice.

Plaintiff's remaining claims allege that TruGreen violated the TCPA by (1) failing to establish procedures for maintaining an internal do-not-call ("DNC") list and (2) calling Plaintiff despite her phone number being on the National DNC Registry. But the undisputed record shows that, contrary to Plaintiff's allegations, TruGreen fastidiously recorded, maintained, and honored DNC requests from existing and prospective customers. TruGreen also implemented robust policies, procedures, and training designed to prevent improper telephone solicitations to

1

individuals on the National DNC Registry. These undisputed facts foreclose Plaintiff's ability to prove the elements of her third and fourth causes of action under 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5). The record also establishes that TruGreen falls within the TCPA's safe harbor to avoid liability for Plaintiff's fifth and sixth causes of action under 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5). The Court should grant TruGreen's motion and dismiss Plaintiff's third through sixth claims with prejudice.

## BACKGROUND

Between January 20 and April 2, 2015, someone in TruGreen's Little Rock, Arkansas branch called Plaintiff eight times. *See* Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment ("SUMF") ¶¶ 3-4. Plaintiff alleges that during these calls, a TruGreen employee attempted to sell her lawn care services. Compl. ¶ 20, ECF No. 1. She also alleges that she requested not to be called on approximately three of these calls. SUMF ¶ 14; Stevens-Bratton Dep. at 74-77. Three months after Plaintiff received her last call from TruGreen, she filed a Complaint against TruGreen. The Complaint alleged that TruGreen used an ATDS to call her, that TruGreen failed to implement policies and procedures to honor DNC requests, and that TruGreen called her despite her presence on the National DNC Registry. *See generally* Compl.

Plaintiff's Complaint contained a number of untrue allegations. For example, Plaintiff alleged that she had received over ten calls from TruGreen after January 27, 2015, even though she only received five calls after that date. *See* Compl. ¶ 18; SUMF ¶ 3. She also alleged that she had never provided her telephone number to TruGreen. *See* Compl. ¶ 26. That was false, because she had actually provided her cell phone number in writing—along with consent for TruGreen to call her at that number—when she signed a Service Agreement with TruGreen in 2013. *See* ECF No. 118 ¶¶ 2-5. Plaintiff's allegation that TruGreen used an ATDS to call her

2

was also false—it was based simply on her alleged memory of a "pause and a click." Compl. ¶ 19; *see* Motion for Partial Summary Judgment on ATDS Claims, ECF Nos. 109-10.

Discovery revealed that Plaintiff's ATDS-based claims were entirely without merit. TruGreen never used an ATDS to call Plaintiff (or any other person) in 2015. Instead, the eight calls that Plaintiff received were made by someone in TruGreen's Little Rock Branch, manually dialing her number from a desktop telephone. Based on these undisputed facts, TruGreen filed a motion for summary judgment seeking dismissal of Plaintiff's ATDS claims on October 17, 2017. That motion remains pending. *See* Motion and Supporting Mem., ECF Nos. 109-10.

Since the filing of that motion, the parties have engaged in and completed fact discovery. Plaintiff deposed four TruGreen corporate representatives over the course of four days. Plaintiff's twenty-eight paragraph corporate deposition notice specifically listed detailed topics regarding technical aspects of TruGreen's telephony systems and databases, the calls TruGreen made to Plaintiff, and TruGreen's policies and procedures related to telemarketing and the TCPA. *See* Amended Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (attached as **Exhibit 1**). TruGreen also answered numerous interrogatories and produced a substantial amount of documents, including policies and procedures, in response to requests from Plaintiff. Discovery closed on July 31, 2018. *See* Scheduling Order, ECF No. 116.

Like Plaintiff's ATDS-based claims, the record now shows that her DNC-based claims are meritless. If Plaintiff requested not to be called in early January 2015, as she vaguely alleges,[1] then someone in TruGreen's Little Rock branch called Plaintiff in error following those requests. These calls cannot support a claim under the TCPA because the undisputed record demonstrates that the calls were aberrations in contravention of TruGreen's comprehensive

---

[1] As discussed below, Plaintiff cannot recall the specific dates on which she allegedly requested not to be called.

3

TCPA compliance program. TruGreen trained all employees on how to handle DNC requests and recoded, maintained, and honored those requests. TruGreen also trained its employees on how to prevent telephone calls to individuals on the National DNC Registry, and maintained a robust set of policies and procedures prevent such calls. TruGreen's good faith efforts at compliance shield it from liability under the TCPA's statutory safe harbor provisions. In light of undisputed record, and as discussed in detail below, TruGreen is entitled to summary judgment on Plaintiff's third, fourth, fifth, and sixth causes of action.

## STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448-49.

"When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)). To show that a fact is, or is not, genuinely disputed, a party must "cite[ ] to particular parts of materials in the record" or "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776

4

(6th Cir. 2012) (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)), cert. denied, 133 S. Ct. 866 (2013).

## ARGUMENT

I. **TRUGREEN ESTABLISHED INTERNAL DNC PROCEDURES PURSUANT TO 47 C.F.R. § 64.1200(D) PRIOR TO CALLING PLAINTIFF.**

Plaintiff's third and fourth causes of action allege that TruGreen violated 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) by failing to record, maintain, and honor DNC requests. *See* Compl. ¶¶ 53-60. "Subsection (d) . . . simply requires the institution of certain procedures prior to the initiation of telemarketing calls. A telemarketer violates this subsection not by placing the calls themselves, but by failing to have the required procedures in place prior to the initiation of the calls." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017); *see also Charvat v. NMP, LLC*, 656 F.3d 440, 444 (6th Cir. 2011). In order to prevail on her third and fourth claims, therefore, Plaintiff must prove that, at the time of the alleged calls in 2015, TruGreen (a) did not have a written policy, available upon demand, for maintaining a do-not-call list, (b) did not inform and train its telemarketing employees in the existence and use of the DNC list, and (c) did not record DNC requests and did not honor such requests within a reasonable time from the date the requests were made. *See* 47 C.F.R. § 64.1200(d).

"If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Simmons*, 222 F. Supp. 3d at 131. That is exactly what the undisputed material facts demonstrate in this case. These undisputed facts require the dismissal of Plaintiff's internal DNC claims.

5

### A. TruGreen Implemented a Written Policy for Maintaining an Internal DNC List.

First, at the time of the calls and as part of its routine business practice, TruGreen had a written policy for maintaining an internal DNC list in compliance with 47 C.F.R. § 64.1200(d)(1). *See* SUMF ¶ 10. TruGreen's Do Not Contact Legal Policy stated that TruGreen was "100% committed to full compliance with all state and federal telemarketing law[s]." *Id.* In order to assure compliance, TruGreen developed a policy "to comply with all applicable laws" and directed that "[f]ull participation by all associates [was] mandatory." *Id.* TruGreen made its DNC policy available to customers upon demand, and provided a form for employees to fill out to fulfill such a request. *See id.*

### B. TruGreen Informed and Trained its Sales Agents in the Existence and Use of its Internal DNC List.

Second, TruGreen's sales agents were "informed and trained in the existence and use of the do-not-call list" in compliance with 47 C.F.R. § 64.1200(d)(2). TruGreen's Do Not Contact Legal Policy mandated DNC training for TruGreen employees at the time of hire and at annual intervals after hiring. *See* SUMF ¶ 11; Zoller Dep. at 44-62. The training informed employees of the existence and use of TruGreen's internal DNC list. *See id.* Pursuant to TruGreen's policy and training, if a TruGreen employee making a call for telemarketing purposes received a request from a residential telephone subscriber not to receive calls from TruGreen, the person would record the request and place the subscriber's name, if provided, and telephone number on the DNC list at the time the request was made. *See* SUMF ¶ 12; Zoller Dep. at 153.

TruGreen trained its employees to recognize that a DNC request could be made through phone, email, mail, or in person. *See id.* ¶ 12(a). Employees were "expected to respond politely and promptly to any Do Not Contact request." *Id.* Employees were trained to apologize to individuals, never to argue with their requests, and to explain that calls would stop as soon as

6

possible (and in any event within thirty days from the request). *Id.* TruGreen told employees that if a customer was listed as "Do Not Call," they "should *never* make an attempt to call that individual, even if the consumer has recently cancelled TruGreen's service." *See id.* ¶ 12(d). TruGreen warned its employees that failure to comply with TruGreen's DNC procedures could result in disciplinary action up to and including termination. *See id.*; *see also id.* ¶¶ 12(b)-(e); Zoller Dep. at 59-62, 60-63, 100, 138-39, 151-52; Smith Dep. at 55-56.

### C. TruGreen Implemented a Procedure for Recording and Honoring DNC Requests.

Third, TruGreen implemented a thorough and effective procedure for recording and honoring DNC requests within thirty days in compliance with 47 C.F.R. § 64.1200(d)(3). The procedure for DNC requests differed for TruGreen employees in customer service and sales roles. TruGreen customer service agents recorded DNC requests in the web-based Do Not Contact Portal maintained by a vendor named ClickPoint. *See* SUMF ¶ 12(b); Zoller Dep. at 59-62, 60-63, 100, 138-39, 151-52. TruGreen sales agents and branch employees recorded DNC requests in a point of sale program called Olympus, which automatically updated the ClickPoint Do Not Contact Portal. *Id.* If the ClickPoint Do Not Contact Portal (for customer service agents) or Olympus (for sales agents or branch employees) were unavailable, TruGreen employees filled out a paper Do Not Contact Request Form. A supervisor would then enter the request into Olympus or the Do Not Contact Portal when the program became available. SUMF ¶ 12(c); Zoller Dep. at 60-61, 136-37. TruGreen honored a residential subscriber's DNC request within a reasonable time from the date such request was made, in any event not exceeding thirty days from the request. SUMF ¶ 12(e); Zoller Dep. at 144. TruGreen also maintained a record of a consumer's request not to receive further telemarketing calls for 5 years from the time the request was made in compliance with 47 C.F.R. § 64.1200(d)(6). SUMF ¶ 13.

### D. Plaintiff Cannot Establish the Elements of Her Claims Under 47 C.F.R. § 64.1200(D).

The undisputed material facts show that Plaintiff's third and fourth causes of action must fail for lacking essential elements of the claims. Plaintiff cannot establish that, at the time of the alleged calls in 2015, TruGreen (a) did not have a written policy, available upon demand, for maintaining a do-not-call list, (b) did not inform and train its telemarketing employees in the existence and use of the DNC list, and (c) did not record DNC requests and did not honor such requests within a reasonable time from the date the requests were made. *See* 47 C.F.R. § 64.1200(d). The undisputed material facts require dismissal of counts three and four of the Complaint with prejudice. *See Nece v. Quicken Loans, Inc.*, 292 F. Supp. 3d 1274, 1283 (M.D. Fla. 2018) (granting summary judgment to defendant based on undisputed facts establishing compliance with 47 C.F.R. § 64.1200(d)(1)-(4)); *Hamilton v. Voxeo Corp.*, No. CIV.A. 3:07-CV-404, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment to defendant under 47 C.F.R. § 64.1200(d)(1) where plaintiff failed to prove that the defendant did not have a policy honoring requests for copies of its DNC policy at the time of its two calls to plaintiff).

## II. TRUGREEN IS PROTECTED BY THE TCPA'S SAFE HARBOR PURSUANT TO 47 C.F.R. § 64.1200(C).

Plaintiff's fifth and sixth causes of action allege that TruGreen initiated more than one telephone solicitation within a 12-month period to her, despite her presence on the National DNC Registry, in violation of 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c)(5). *See* Compl. ¶¶ 62-68. The TCPA and its implementing regulations provide a safe harbor for telemarketers that make a good faith attempt to avoid placing calls to phone numbers on the National DNC Registry. Pursuant to 47 U.S.C. § 227(c)(5)(C), "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with

due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."

The safe harbor applies when a defendant demonstrates that the telephone call was the result of error and that as part of its routine business practice, it (a) has established and implemented written procedures to comply with the national DNC rules, (b) has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national DNC rules, (c) has maintained and recorded a list of telephone numbers that the seller may not contact, (d) uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the DNC rules, (e) uses a process to ensure that it does not sell, rent, lease, purchase or use the national DNC database, or any part thereof, for any purpose except compliance, (f) has obtained the subscriber's prior express invitation or permission. 47 C.F.R. § 64.1200(c)(2)(i)(A)-(E). The undisputed material facts demonstrate that TruGreen satisfied each of the safe harbor's elements.

### A. TruGreen's Calls to Plaintiff Were in Error.

Any telemarketing call Plaintiff received more than thirty days after Plaintiff requested that TruGreen stop calling her was made in error. *See* SUMF ¶¶ 9, 14; Zoller Dep. at 119-20. Plaintiff received eight telephone calls from TruGreen in 2015. *See* SUMF ¶ 14. Plaintiff received those telephone calls on January 20, 22, and 23, February 3, 9, 11, and 21, and April 2, 2015. *See id.* Plaintiff alleges that she registered for the National DNC Registry in 2013 and that she requested TruGreen stop calling her during approximately three of the eight calls in 2015. *See id.*[2] Plaintiff alleges that "[s]ome of these" eight calls were received thirty or more days after her DNC request. *See* Compl. ¶ 23.[3]

---

[2] Plaintiff could not recall the exact number of calls on which she alleged requested not to be called, could not remember the dates of her requests, and could not remember the amount of time

9

The record does not contain evidence of the reason for any calls outside such a thirty-day window. It is clear that TruGreen did not add Ms. Stevens-Bratton to any centralized calling campaign at any time, which would be consistent with TruGreen's Experian-based DNC scrubbing procedures if she had requested not to be called. SUMF ¶ 7. It is possible that an employee in TruGreen's Little Rock Branch erroneously called Plaintiff using an outdated paper list, contrary to TruGreen's training and procedures. *See, e.g.*, SUMF ¶¶ 18(h); Zoller Dep. at 42-43. Whatever the reason, if Plaintiff requested not to be called in early January 2015, someone in TruGreen's Little Rock branch called Plaintiff in error and in contravention of TruGreen's DNC training, policies, and procedures. In light of TruGreen's comprehensive TCPA compliance program—discussed below—any erroneous calls to Plaintiff cannot support a claim under the TCPA.

### B. TruGreen Implemented Written Procedures to Comply with the National DNC Registry.

TruGreen established and implemented robust written procedures to comply with the national DNC rule pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(A). TruGreen's procedures included mandated training for employees on the history and requirements of the National DNC Registry, descriptions of TruGreen's accessing of the Registry, removal of numbers on the Registry from telemarketing campaigns, and technical specifications on how TruGreen ensured proper scrubbing of Registry numbers. *See* SUMF ¶ 15; Zoller Dep. at 132 and Ex.4, 139-46.

---

that elapsed between each request and the next alleged call. *See* SUMF ¶ 14; Stevens-Bratton Dep. at 74-77. She did recall that the TruGreen employees on those three or so calls were pleasant and agreed that TruGreen would stop calling Plaintiff. *See id.* at 75.

[3] Telemarketers have up to thirty days to effectuate a DNC request. *See* 47 C.F.R. § 64.1200(d)(3).

## C. TruGreen Trained its Employees to Comply with the National DNC Registry.

TruGreen trained its personnel in procedures established pursuant to the national DNC rules in compliance with 47 C.F.R. § 64.1200(c)(2)(i)(B). TruGreen personnel received DNC training upon hire, at subsequent annual intervals, and in real-time as ad hoc situations arose. TruGreen trained employees on DNC rules in person, through video presentations on TruGreen's internal website, and with paper or electronic material. TruGreen required its employees to certify that they had completed their yearly DNC training, and maintained records of such training. TruGreen also monitored its sales employees, including by recording their telemarketing calls, to facilitate training and to ensure the integrity of the sales process. *See* SUMF ¶ 16; Zoller Dep. at 44-62 and Ex. 4, 134-35, 140, 148-49; Yelverton Dep. at 66-77.

## D. TruGreen Maintained a List of Numbers on the National DNC Registry and Applied a Process to Prevent Telephone Solicitations those Numbers.

TruGreen maintained a list of telephone numbers on the National DNC Registry in compliance with 47 C.F.R. § 64.1200(c)(2)(i)(C) and implemented a process to prevent solicitations to those numbers pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(D). *See* SUMF ¶¶ 17-18; Zoller Dep. at 21, 65-66, 76-80, 143-46. To obtain access to the National DNC Registry, TruGreen obtained a Subscription Account Number ("SAN") from the Federal Trade Commission each year. *See id.* TruGreen partnered with a vendor named Experian to help ensure that TruGreen's list of numbers on the National DNC Registry was always up-to-date, and to help implement TruGreen's processes to prevent calls to individuals on those lists. *See* SUMF ¶ 18(a). Another vendor, ClickPoint, provided TruGreen with a software platform that integrated DNC information—including the National DNC Registry—into TruGreen's telemarketing campaigns to make sure that TruGreen did not call numbers on the Registry. *See* SUMF ¶ 18(c).

TruGreen implemented processes to synch Experian and ClickPoint with each other and with Mission, TruGreen's customer relationship management platform. SUMF ¶ 18. In some instances, TruGreen employed redundant safety checks, and went beyond the requirements of the TCPA's implementing regulations, to ensure the best possible customer experience. TruGreen's processes were designed to ensure that no sales employee improperly called numbers on the National DNC Registry:

- Experian updated federal and state DNC information for TruGreen on at least a monthly basis. *See* SUMF ¶ 18(b); Smith Dep. at 24, 34-36. Experian also updated its information on TruGreen's internal DNC list with a daily download of information from ClickPoint and a weekly sync with TruGreen's Mission system. *See id.*

- Like Experian, ClickPoint's software program, called the Do Not Contact Portal, maintained information regarding federal, state, and internal DNC lists. TruGreen employees could record internal DNC requests directly into the Do Not Contact Portal, which updated the Portal instantaneously. ClickPoint also received federal and internal DNC information from Experian on a weekly basis and automatically updated the Do Not Contact Portal with that information. *See* SUMF ¶ 18(c); Yelverton Dep. at 47-48; Zoller Dep. at 59-62; Smith Dep. at 38, 39-40.

- TruGreen developed telemarketing campaigns approximately once a year, beginning with lead information from Mission (for current and former customers), Experian (for prospective customers), or direct customer inquiries. *See* SUMF ¶ 18(d). TruGreen used an Experian-provided software program called MCM to set the criteria for inclusion in the campaign. Once the campaign program was built, it ran on a recurring basis once a week. Each week, Experian sent TruGreen refreshed campaign files. Experian scrubbed the campaign files to remove any individual that TruGreen should not call pursuant to applicable rules relating to the National DNC Registry and state DNC list. Experian also scrubbed the campaign files to remove any individual on TruGreen's internal DNC list. *See* Smith Depo at 24-29, 60-62; Zoller Dep. at 77-79.

- TruGreen downloaded the weekly refreshed campaign files from Experian, then performed its own secondary scrubbing of the files using DNC information that TruGreen downloaded on a daily basis from the Clickpoint Do Not Call Portal. *See* SUMF ¶ 18(e). After these two layers of DNC scrubbing, TruGreen loaded the scrubbed and refreshed campaign files into SalesExec. SalesExec presented TruGreen sales agents with telephone numbers that would be manually dialed, from the scrubbed lists, to call for telemarketing purposes. As an additional safety check, ClickPoint automatically prohibited the pulling of any telephone number identified on the national or internal DNC lists in the ClickPoint DNC portal. *See* SUMF ¶ 18(f); Zoller Dep. at 80-82, 85-89, 104-06, 143-45; Smith Dep. at 39-40, 47-49.

- Once a day, Experian and TruGreen's Customer Relationship Management database, Mission, received an internal DNC list update via an automated download of information from ClickPoint. Once a week, TruGreen received a federal and state DNC list update via an automated download of information from Experian. Mission maintained DNC flags for all current and former customers based on these updates. *See* SUMF ¶ 18(g); Zoller Dep. at 66-67; Yelverton Dep. at 22, 63-64.

Although a majority of TruGreen's telemarketing occurs out of telecenters, branch employees also engage in telemarketing. In 2015, some branch employees without access to SalesExec made telemarketing calls based on paper lists of customers that their supervisors printed from SalesExec or Mission. Branch employees were required to check each telephone number in Mission for applicable DNC flagging before calling the number for telemarketing purposes. TruGreen also instructed those employees to remove expired call lists from the sales floor after any update to the lists, and to immediately remove calling material after receiving a DNC request from a person on a list. *See* SUMF ¶ 18(h); Zoller Dep. at 42-43, 126.

### E. TruGreen Did Not Sell, Rent, Lease, Purchase, or Use the National DNC Registry for any Purpose other than Compliance with Applicable Regulations.

TruGreen used a process to ensure that it did not sell, rent, lease, purchase or use the national DNC database, or any part thereof, for any purpose except compliance, pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(E). *See* SUMF ¶ 19. TruGreen did not participate in cost sharing for access to the National DNC Registry. Each year since 2015, TruGreen has obtained a certified Subscription Account Number ("SAN") from the Federal Trade Commission to access and use the National DNC Registry. TruGreen has never let any other entity access the National DNC Registry with TruGreen's SAN. *See id.*

### F. The TCPA's Safe Harbor Requires Dismissal of Plaintiff's National DNC Registry Claims.

Based on these undisputed facts, TruGreen falls within the TCPA's statutory safe harbor. 47 C.F.R. § 64.1200(c)(2)(i). Even assuming TruGreen improperly made more than one

13

telephone call to Ms. Stevens-Bratton more than thirty days after she requested not to be called, TruGreen's good faith efforts to prevent improper calls to persons on the National DNC Registry protect TruGreen from liability for those calls. The Court should grant summary judgment to TruGreen on Plaintiff's fifth and sixth causes of action and dismiss those claims with prejudice.

## CONCLUSION

For all of the reasons discussed above, Plaintiff's third, fourth, fifth, and sixth cause of action are without merit. Plaintiff cannot present proof to satisfy the elements of her claims under 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5). Nor can she dispute the facts establishing TruGreen's compliance with the statutory safe harbor under 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5). Accordingly, the Court should grant summary judgment in TruGreen's favor and dismiss Plaintiff's third through sixth claims with prejudice.

Respectfully Submitted,

s/ George T. Lewis III
George T. Lewis III (TN #7018)
Matthew S. Mulqueen (TN #28418)
Mitchell S. Ashkenaz (#34129)
BAKER, DONELSON, BEARMAN, CALDWELL
   & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mmulqueen@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant TruGreen, Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that, on September 12, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

                                                s/ George T. Lewis, III