**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| KASIE STEVENS-BRATTON, individual and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:15-cv-2472 |
| v. | ) ) | Oral Argument Requested |
| TRUGREEN, INC., | ) ) | |
| Defendant. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

George T. Lewis III (TN #7018)
Matthew S. Mulqueen (TN #28418)
Mitchell S. Ashkenaz (#34129)
BAKER, DONELSON, BEARMAN, CALDWELL
 & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mmulqueen@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant TruGreen, Inc.*

Defendant TruGreen, Inc. ("TruGreen"), pursuant to Local Rule 56.1(c) and by and through undersigned counsel, files this reply memorandum in support of its motion for partial summary judgment. *See* ECF Nos. 156, 157.[1]

## OBJECTIONS TO PLAINTIFF'S RULE 56 EVIDENCE

Plaintiff's filings in response to TruGreen's motion for partial summary judgment include a Declaration from Heather Rolbiecki, ECF No. 167, and anonymous Yelp reviews, attached as Exhibit F to the Declaration of Jennifer Rust Murray, ECF 165-2. This previously-undisclosed evidence is inadmissible and should be stricken or disregarded by the Court when considering TruGreen's motion. *See* Fed. R. Civ. P. 56(c)(2); Local Rule 56.1(e).

On November 9, 2017, U.S. Magistrate Judge Tu Pham entered a Scheduling Order in this case. *See* ECF No. 116. Pursuant to that order, the parties exchanged Rule 26(a) Initial Disclosures on November 30, 2017. Plaintiff's Initial Disclosures did not include any reference to Ms. Rolbiecki or to Yelp reviews. *See* Plaintiff's Initial Disclosures (attached as **Exhibit A**). The court's scheduling order also set a merits discovery cutoff of July 31, 2018. *See* ECF No. 116. Prior to the discovery deadline, Plaintiff failed to amend her Rule 26(a) Initial Disclosures to include any reference to Ms. Rolbiecki or to Yelp reviews. Nor did Plaintiff make any mention of either source of information in her written responses to TruGreen's discovery requests, in her production of documents, or during her deposition.

Despite never disclosing this evidence during discovery, the material constitutes the primary "support" for her attempts to manufacture disputed issues of fact. *See, e.g.*, Plaintiff's

---

[1] In support of its motion, TruGreen also relies on its Response to Plaintiff's Counter-Statement of Undisputed Material Facts. Citations to TruGreen's Statement of Undisputed Material Facts, ECF No. 157, will refer to "TruGreen's SUMF." Citations to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Counter-Statement of Undisputed Material Facts, ECF No. 164, will refer to "Plaintiff's SUMF." Citations to TruGreen's Response to Plaintiff's SUMF will refer to "TruGreen's RSUMF."

SUMF ¶¶ 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 26, 27, 28. Plaintiff cites the newly-disclosed evidence in support of her so-called factual contentions that TruGreen intentionally places telephone calls in violation of the TCPA, fails to add customers to its internal DNC list, calls individuals despite their presence on the National DNC Registry, and fails to follow its written DNC policies and procedures. *See id.* The Court should not allow this evidence in the record.

*First*, the Court should strike the declaration of Jennifer Rust Murray because it is not signed by Ms. Murray. The Declaration is instead signed by Beth E. Terrell, another attorney at Ms. Murray's firm. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "The probative force of a declaration subscribed under penalty of perjury derives from the signature of the declarant. Without the declarant's signature, a declaration is completely robbed of any evidentiary force." *Blumberg v. Gates*, No. CV 00-05607 GAF, 2003 WL 22002739, at *1 (C.D. Cal. Aug. 19, 2003). Ms. Terrell's signature for Ms. Murray "is unacceptable, as one may not sign a declaration 'for' another in this manner, with no explanation proffered." *Id.* The court should strike or disregard the entire Murray Declaration.

*Second*, the Court should strike the Declaration of Heather Rolbiecki and the anonymous Yelp reviews because Plaintiff failed to disclose the material during discovery. "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The factual disputes that Plaintiff attempts to create with this evidence go directly to the elements of Plaintiff's internal DNC claims and TruGreen's safe harbor defense to Plaintiff's National DNC

Registry claims.[2] Plaintiff makes no attempt to argue that she was unaware of the elements of these claims and defenses, or that the newly-cited evidence was unavailable before the close of discovery.[3] The failure to disclose this material will prejudice TruGreen if the court fails to strike or disregard the material. By waiting until after the close of merits discovery, Plaintiff has prevented TruGreen from deposing Ms. Rolbiecki, comparing and refuting her allegations with TruGreen's own records, probing the veracity of the anonymous, cherry-picked Yelp reviews, introducing evidence of positive reviews, and otherwise producing discovery to attack the relevance and truth of the matters alleged in the newly-disclosed material.[4]

*Third*, the Court should strike Exhibit F to the Murray Declaration because "Yelp! pages and ratings are out of court statements, which, if being offered for the truth of the matter asserted, are inadmissible under Fed. R. Evid. 801." *See Mathew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 11432038, at *2 (N.D. Cal. Sept. 21, 2016). Plaintiff offers the out-of-court statements in an attempt to prove the truth of the matters purportedly described in the reviews and argued in Plaintiff's brief—that TruGreen intentionally violated the TCPA when it placed calls to these individuals and to the Plaintiff, that TruGreen failed to add individuals to its internal DNC list, and that TruGreen failed to follow regulations regarding the

---

[2] *See, e.g.*, Plaintiff's Response at 1, 4-6, 8-11.

[3] In fact, the Rolbiecki Declaration describe events allegedly occurring between 2017 and July 2018, well before the close of discovery in this case. *See* Rolbiecki Decl. ¶¶ 2-7. There is similarly no justification for the late disclosure of the Yelp reviews, which appear to have been publicly-available for up to three years. *See* Murray Decl. Ex. F.

[4] For this reason, courts in the Sixth Circuit have not hesitated to strike evidence at the motion for summary judgment stage based on a party's failure to disclose the evidence during discovery. *See Shulman v. Amazon.com.kydc, LLC*, No. CIV.A. 13-5-DLB-REW, 2015 WL 1782636, at *7 (E.D. Ky. Apr. 20, 2015), *aff'd sub nom. Shulman v. Amazon.com.kydc, Inc.*, No. 15-6211, 2017 WL 5135522 (6th Cir. Jan. 11, 2017); *Henderson v. Reyda*, No. 3:03-CV-703, 2005 WL 6218586, at *3 (E.D. Tenn. June 7, 2005); *Kovacevich v. Vanderbilt Univ.*, No. 3:09-0068, 2010 WL 1492581, at *9 (M.D. Tenn. Apr. 12, 2010).

National DNC Registry. *See, e.g.*, Plaintiff's RSUMF ¶¶ 9, 14; Plaintiff's Response at 4, 6, 9. Moreover, the anonymous reviews lack the requisite "circumstantial guarantees of trustworthiness" to fall under the residual exception to the rule against hearsay.[5]

Accordingly, TruGreen requests that the Court strike or disregard the entire Murray Declaration, the entire Rolbiecki Declaration, the anonymous reviews attached as Exhibit F to the Murray Declaration, and all references to such material in Plaintiff's filings.[6]

## ARGUMENT

The undisputed material facts in this case demonstrate that Plaintiff cannot establish the elements of her third and fourth causes of action and that TruGreen is entitled to the benefit of the regulatory safe harbor under Plaintiff's fifth and sixth causes of action.[7] The record shows that TruGreen established robust policies and procedures to comply with the TCPA prior to placing its alleged calls to Plaintiff. These policies and procedures require dismissal of Plaintiff's claims regardless of whether TruGreen called her in 2015 despite her alleged request to the contrary. That result is, after all, the clear intent of the applicable regulations: to encourage entities to comply with the TCPA and to not penalize them when mistakes occur despite such compliance efforts. 47 C.F.R. § 64.1200(d); 47 C.F.R. § 64.1200(c).

Plaintiff's Response largely avoids discussion of the substance of TruGreen's policies and procedures. Instead—putting aside her reliance on the inadmissible evidence discussed

---

[5] *Mathew Enter.*, 2016 WL 11432038, at *2; *see also Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, No. 08-00359, 2008 WL 5423191, at *4 (D. Hawai'i Dec. 31, 2008) ("[U]nder the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements.").

[6] If the Court declines to strike or exclude the Rolbiecki Declaration, then TruGreen requests additional time to pursue discovery on the issues raised in the document.

[7] Plaintiff's first and second causes of action are based on the mistaken allegation that TruGreen used an automatic telephone dialing machine to call her. TruGreen did not, and has a pending motion for summary judgment seeking dismissal of those two claims. *See* ECF No. 109.

4

above—Plaintiff's primary argument is that TruGreen's internal DNC policies were not in place when she allegedly requested not to be called in July and August 2014. She also argues that TruGreen's National DNC Registry procedures were not in place until December 2015.

Plaintiff's argument is factually incorrect and legally irrelevant. As an initial matter, Plaintiff's new focus on TruGreen's policies as of July and August 2014 is strange because she failed to inquire about that time period during discovery. Plaintiff's requests for production, for example, were expressly limited to "any time from September 24, 2014 through the present." Plaintiff's Requests for Production (attached as **Exhibit B**). Had she asked, she would have learned that TruGreen <u>did</u> have the same robust policies and procedures in place, for both internal DNC list and National DNC Registry purposes, during the early part of 2014 (and earlier). Although the record clearly refutes Plaintiff's contentions, her argument is also irrelevant because the proper inquiry under Sections 64.1200(d) and (c) is whether TruGreen established written policies and procedures prior to its alleged calls to Plaintiff in 2015, not at the time of Plaintiff's alleged requests not to be called in 2014. With Plaintiff's time-based argument swept aside, her Response is left with a handful of attempts to manufacturer disputed issues of fact through misleading discussions of the testimony and documentary evidence in the case. Each of these so-called disputes is easily resolved by a complete review of the record. For the reasons addressed below, the undisputed material facts compel the dismiss of Plaintiff's third through sixth causes of action.

I. **PLAINTIFF FAILS TO IDENTIFY A DISPUTED ISSUE OF FACT REGARDING TRUGREEN'S COMPLIANCE WITH 47 C.F.R. § 64.1200(D).**

To prevail on her claims under Section 64.1200(d), Plaintiff must prove that TruGreen initiated telemarketing calls to her in 2015 without "institut[ing] procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or

5

entity." 47 C.F.R. § 64.1200(d).  The relevant inquiry for these claims is not "the calls themselves, but [] hav[ing] the required procedures in place prior to the initiation of the calls." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017).

**Plaintiff's claims must be dismissed because Plaintiff does not dispute that TruGreen had such procedures in place prior to the calls**.  Plaintiff's contention that TruGreen did not implement internal DNC procedures until September 29, 2014 is irrelevant. Plaintiff concedes that TruGreen had the procedures in place after September 29, 2014, and therefore before the calls.  *See, e.g.*, Plaintiff's SUMF ¶ 12(a).  That alone requires dismissal of Plaintiff's claims.

**But Plaintiff's contention is also factually incorrect**.  Plaintiff's argument is based on a September 29, 2014 date listed on TruGreen's Do Not Contact Legal Policy.  Plaintiff fails to mention that the September 29 date is merely the "Last Updated" date, and that the Policy also states that it was issued on January 1, 2014.  *See* TruGreen's RSUMF ¶ 22.[8]  The September 29, 2014 version of the Policy added images to help guide associates to the appropriate training on ServiceMaster University, but contained the same substantive policy directives (and referenced the same mandatory DNC training) as the version preceding the update.  *See id.*  At all times during 2014 and 2015, TruGreen's Do Not Contact Legal Policy specified, in writing, that sales and branch associates complete annual TCPA training that included instruction on compliance with applicable rules and regulations regarding TruGreen's internal do-not-call list and the National Do-Not-Call Registry.  *See id.*

---

[8] The fact that Plaintiff failed to explore this date issue during discovery, and is only now raising it in her Response, is further demonstration of the meritless nature of this misleading argument.

6

**Plaintiff's argument that TruGreen's internal DNC procedures are "imperfect" is also off the mark**. Citing testimony from TruGreen corporate representative Matt Zoller, Plaintiff claims that TruGreen does not know who is responsible for entering information on paper DNC request forms into TruGreen's electronic DNC Portal. *See* Response at 2, 8. Mr. Zoller actually testified that the person designated to enter such information into the DNC Portal "depend[s] on the location and the circumstances of the requests." Zoller Dep. at 61:6-8. Consistent with that testimony, TruGreen's DNC Policy required employees to give completed paper DNC forms (which were only used if employees could not enter the information electronically) to "a manager, [Customer Service Representative] or the designated branch associate who has access to enter the request into Olympus." TruGreen's RSUMF ¶ 23.

**Plaintiff's remaining arguments rest on similar distortions of the record**. Plaintiff claims that TruGreen only keeps a record of internal DNC requests for two years instead of five. First, the relevant regulation actually states that a "do-not-call request must be <u>honored</u> for 5 years from the time the request is made." 47 C.F.R. § 64.1200(d)(6) (emphasis added). The section says nothing about record retention. Second, the document Plaintiff cites simply says that TruGreen will keep <u>paper</u> DNC request forms for two years. All DNC requests initially recorded on a paper form are subsequently entered into TruGreen's electronic DNC Portal. *See* TruGreen's RSUMF ¶ 24. The DNC Portal, as well as TruGreen's Mission system, maintains records of DNC requests—and TruGreen honored such requests—for at least five years. *See id.* Lastly, the fact that TruGreen's sales and telemarketing employees entered DNC requests into two different software programs is not in dispute. Contrary to Plaintiff's implication that such measures are deficient, the procedures actually show that TruGreen thoughtfully tailored its

compliance efforts to fit groups of employees in different roles and workstations throughout the organization. *See* TruGreen's SUMF ¶ 12(b)-(c).

Because Plaintiff cannot demonstrate that TruGreen failed to implement the procedures set out in 47 C.F.R. § 64.1200(d) prior to allegedly calling her in 2015, the Court should dismiss the third and fourth causes of action in her Complaint.

## II. PLAINTIFF FAILS TO IDENTIFY A DISPUTED ISSUE OF FACT REGARDING APPLICATION OF THE SAFE HARBOR SET OUT IN 47 C.F.R. § 64.1200(C).

The TCPA's implementing regulations provide a safe harbor for an entity that erroneously calls an individual on the National DNC Registry as long as the entity, as part of its routine business practice, implements the policies and procedures set out in 47 C.F.R. § 64.1200(c)(2)(i). Plaintiff's Response to TruGreen's safe harbor defense rests primarily on misguided and factually incorrect arguments on the timing (not substance) of TruGreen's policies and procedures. But the undisputed material facts demonstrate that TruGreen implemented such procedures prior to its calls to Plaintiff, requiring dismissal of Plaintiff's fifth and sixth causes of action.

**Contrary to Plaintiff's contentions, TruGreen's policies, procedures, and training on the National DNC Registry were in existence long before the alleged 2015 calls.** TruGreen's DNC Legal Policy—which Plaintiff admits was in place at least by September 29, 2014—stated that "TruGreen [wa]s 100% committed to full compliance with <u>all state and federal telemarketing law</u>." TruGreen's SUMF, Ex. 7 (emphasis added). The Legal Policy directed associates to mandatory training courses that included specific discussion of, and training on, the National DNC Registry. *See* TruGreen's RSUMF ¶ 32. Consistent with that testimony, the records of annual DNC training completed by Little Rock branch employees—the

branch from which 2015 calls originated—include 2014 training completed as early as February 2014. *See* TruGreen's RSUMF ¶ 32.

**Plaintiff's reliance on a contract between TruGreen and Experian dated December 2015 is misplaced**. TruGreen has received National DNC Registry-related services from Experian since at least 2013. *Id.* ¶ 33. Prior to January 14, 2014, TruGreen was a subsidiary of ServiceMaster. During that time, TruGreen received services from Experian pursuant to a contract between ServiceMaster and Experian. *Id.* Following the spin-off,[9] TruGreen continued receiving services from Experian pursuant to a Transition Services Agreement, until TruGreen executed its own contract with Experian in December 2015. *Id.* At all times during 2014 and 2015, TruGreen followed the policies, practices, and procedures outlined in Paragraphs 18(a)-(g) of TruGreen's SUMF to comply with regulations regarding the National DNC Registry. *Id.*[10]

**Finally, Plaintiff has failed to identify a factual dispute regarding the erroneous nature of TruGreen's 2015 calls**. Plaintiff's arguments on this issue consist of citations to inadmissible and unreliable allegations by a handful of (mainly anonymous) individuals and the false contention that TruGreen implemented a "forward-looking only" DNC practice in December 2015.[11] *See* Response at 10. Plaintiff does not dispute that the eight alleged calls

---

[9] TruGreen explained the nature of its relationship with ServiceMaster to Plaintiff during discovery. *See, e.g.*, ECF No. 110 ¶¶ 11, 15-17. Plaintiff nevertheless chose not to seek discovery from TruGreen or ServiceMaster regarding the impact of TruGreen's spin-off on its relationship with Experian.

[10] Similarly, TruGreen used the ClickPoint DNC Portal to retain records of DNC requests since 2012. *See* TruGreen's RSUMF ¶ 33.

[11] Plaintiff's argument that TruGreen's scrubbing procedures were "forward-looking only" is premised on the false contention that TruGreen only began scrubbing for registrants on the National DNC Registry in December 2015. *See* TruGreen's RSUMF ¶ 33. Moreover, the contention is simply unsupported by the record—TruGreen's scrubbing procedure routinely removes numbers from calling campaigns regardless of when the numbers were added to the National DNC Registry. *See* TruGreen's RSUMF ¶ 34.

9

originated by an associate manually dialing her number into a landline telephone at TruGreen's Little Rock branch. *See* Plaintiff's SUMF ¶¶ 2-8. These calls were not made pursuant to a centralized TruGreen calling campaign, which would have scrubbed Plaintiff's number given her presence on the National DNC Registry. *See id.* ¶¶ 7, 15, 18. If the eight telephone calls to Plaintiff were made for telemarketing purposes, as Plaintiff alleges, then they were likely made using a paper calling list. *See id.* ¶ 18(h). TruGreen had a policy and procedure in place for such calls. *See id.* However, an agent may have erroneously called Plaintiff using an expired paper list, without checking SalesExec or Mission for up-to-date DNC information as required by TruGreen's policies and procedures. *See id.* Any telemarketing call that Plaintiff received more than thirty days after Plaintiff requested that TruGreen stop calling her was therefore made in error. *See id.* ¶ 9.

## CONCLUSION

For all of the reasons addressed above and in TruGreen's original memorandum, the Court should dismiss Plaintiff's third through sixth causes of action with prejudice.

Respectfully Submitted,

s/ George T. Lewis III
George T. Lewis III (TN #7018)
Matthew S. Mulqueen (TN #28418)
Mitchell S. Ashkenaz (#34129)
BAKER, DONELSON, BEARMAN, CALDWELL
 & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mmulqueen@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant TruGreen, Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that, on November 30, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

                                                  <u>s/ George T. Lewis III</u>