```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| KASIE STEVENS-BRATTON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TRUGREEN, INC.,<br><br>    Defendant. | No. 2:15-cv-2472 |

## ORDER

Before the Court is Defendant TruGreen, Inc.'s ("TruGreen") July 26, 2017 Motion to Strike Class Allegations Based on Plaintiff's Class Action Waiver ("Motion to Strike Class Allegations"). (ECF No. 78.) Plaintiff Kasie Stevens-Bratton responded on August 23, 2017. (ECF No. 89.) TruGreen replied on September 8, 2017. (ECF No. 101.)

For the following reasons, TruGreen's Motion to Strike Class Allegations is DENIED.

### I.  Background

TruGreen is a lawn care service provider with its headquarters in Memphis, Tennessee. (ECF No. 1 ¶ 12.) On May 15, 2013, Stevens-Bratton entered into an agreement with TruGreen for lawn care services (the "Service Agreement"). (ECF No. 22-1 at 2-3.) The

Service Agreement includes contact, mandatory arbitration, and class action waiver provisions:

> **CONTACT INFORMATION.**  If I have provided TruGreen with my cell phone number, I agree that TruGreen may contact me on that number using an automatic telephone dialing system or prerecorded or artificial voice to discuss my account and lawn care services, including current and possible future services, customer service and billing.  I understand that providing my cell phone number is not required to purchase TruGreen's services and that I may revoke this permission at any time.
>
> **MANDATORY ARBITRATION.**  Purchaser and TruGreen agree that any claim, dispute or controversy ("Claim") between them or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement including but not limited to any tort or statutory Claim shall be resolved by neutral binding arbitration by the American Arbitration Association ("AAA"), under the Rules of the AAA in effect at the time the Claim is filed ("AAA Rules")....  Each party shall be responsible for paying its own attorneys' fees, costs and expenses, the arbitration fees and arbitrator compensation shall be payable as provided in the AAA Rules.  However, for a Claim of $15,000 or less brought by Purchaser in his/her/its individual capacity, if Purchaser so requests in writing, TruGreen will pay Purchaser's arbitration fees and arbitrator compensation due to the AAA for such Claim to the extent they exceed any filing fees that the Purchaser would pay to a court with jurisdiction over the Claim.  The arbitrator's power to conduct any arbitration proceeding under this arbitration agreement shall be limited as follows: any arbitration proceeding under this agreement will not be consolidated or joined with any arbitration proceeding under any other agreement, or involving any other property or premises, and will not proceed as a class action or private attorney general action.  The foregoing prohibition on consolidated, class action and private attorney general arbitrations is an essential and integral part of this arbitration clause and is not severable from the remainder of the clause.... This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. 9 U.S.C. Sections 1-16.... Neither party shall sue the other party with respect to any matter in

>dispute between the parties other than for enforcement of this arbitration agreement or of the arbitrator's award.  THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE TO HAVE ANY DISPUTES DECIDED THROUGH ARBITRATION.
>
>**CLASS ACTION WAIVER.**  Any Claim must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar basis ("Class Action"), and the parties expressly waive any ability to maintain any Class Action in any forum whatsoever.  The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action.  Nor shall the arbitrator have authority to make an award to any person or entity not a party to the arbitration.  Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only in a court of competent jurisdiction and not by an arbitrator.  THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION.

(ECF No. 22-1 at 3.)  The Service Agreement allows cancellation "at any time by written oral notification . . . ."  (Id.) Cancellation is "without penalty or obligation."  (Id.)  The Service Agreement is silent on the terms and obligations, if any, that survive its cancellation.  (See generally id.)

TruGreen provided lawn care services to Stevens-Bratton from May 15, 2013, until May 15, 2014, when Stevens-Bratton cancelled the Service Agreement.  (See ECF No. 22-1 at 2; ECF No. 39-1 ¶ 2.) Stevens-Bratton provided two telephone numbers on the Service Agreement, one under the "Home Phone" section, and a different one under the "Cell Phone" section.  (ECF No. 22-1 at 2.)  On January

27, 2015, Stevens-Bratton began to receive telemarketing calls from TruGreen on her cellular telephone. (ECF No. 1 at ¶ 18.) Stevens-Bratton alleges those calls were made by an automatic telephone dialing system ("ATDS"). (See id. ¶¶ 29-30.) Stevens-Bratton asked TruGreen to stop calling, but the calls continued. (Id. ¶ 23.)

On July 15, 2015, Stevens-Bratton filed this putative class action against TruGreen, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (ECF No. 1.) On July 15, 2015, Stevens-Bratton sought class certification or, in the alternative, a stay of certification briefing pending discovery. (ECF No. 9.) On August 26, 2015, TruGreen filed an answer and a motion to dismiss and compel arbitration or, in the alternative, to stay the litigation. (ECF Nos. 22, 24.) On January 12, 2016, the Court denied Stevens-Bratton's motion for class certification, granted TruGreen's motion to compel arbitration, dismissed all claims against TruGreen, and entered a judgment for TruGreen. (ECF Nos. 44-45.)

Stevens-Bratton appealed, and the Sixth Circuit reversed. Stevens-Bratton v. TruGreen, Inc., 675 F. App'x 563 (6th Cir. 2017). The Sixth Circuit held that "the dispute between Stevens-Bratton and TruGreen d[id] not 'arise under' the [Service Agreement]," and therefore, the Service Agreement's arbitration provision did not bind Stevens-Bratton to arbitration because "the

4

presumption in favor of postexpiration arbitration of matters [] appl[ies] 'only where a dispute has its real source in the contract.'" See Stevens-Bratton, 675 F. App'x at 565, 567-71 (citing Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 193 (1991)). On appeal, TruGreen argued that, if the Sixth Circuit held the arbitration provision inapplicable, the class action waiver provision in the Service Agreement was applicable, and the Sixth Circuit should affirm on that ground. (Id. at 571.) The Sixth Circuit declined to address TruGreen's class action waiver argument because "the district court did not make findings of fact or conclusions of law regarding the merits of Stevens-Bratton's motion for class certification" and "there [wa]s no record to review regarding application of the class action waiver." (Id.)

On July 26, 2017, TruGreen filed its Motion to Strike Class Allegations based on the class action waiver provision in the Service Agreement. (ECF No. 78.)

**II.  Jurisdiction**

The Court has jurisdiction over Stevens-Bratton's claims. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Stevens-Bratton's complaint alleges violations of the TCPA. (ECF No. 1.) The Court has federal question jurisdiction. See Mims v. Arrow Fin. Servs.,

5

LLC, 565 U.S. 368, 376 (2012); accord Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 463-65 (6th Cir. 2010).

**III. Standard of Review**

A court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). "A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Loreto v. Procter & Gamble Co., No. 1:09-cv-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013) (citing Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 945 (6th Cir. 2011)). Motions to strike class allegations may be granted "where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts." 1 McLaughlin on Class Actions § 3:4 (10th ed. 2020) (citing Doe v. City of Memphis, 928 F.3d 481, 497 (6th Cir. 2019) (reversing order striking class allegations where the panel concluded that discovery might support Rule 23 requirements and no "prototypical factual issue" that would prevent certification was apparent)). "Class allegations also may be stricken when they are asserted in contravention of a clear legal bar against class treatment of the action . . . ." Id. (collecting cases).

**IV.  Analysis**

TruGreen argues that Stevens-Bratton's class allegations should be stricken because the Service Agreement's class action waiver provision requires her to bring "[a]ny Claim" in her "individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar basis ("Class Action") . . . ." (ECF No. 78 at 5-8) (citing No. 22-1 at 3.)

Stevens-Bratton argues that, when she cancelled the Service Agreement, "all her obligations, rights, and responsibilities under the Service Agreement terminated and nothing in the Service Agreement governs the present lawsuit: including the Class Action wavier." (ECF No. 89 at 6.)  Stevens-Bratton relies on the Sixth Circuit's decision in Stevens-Bratton, where the panel held that the present dispute was not subject to arbitration under the Service Agreement's arbitration provision because the present dispute did not arise under the Service Agreement. (Id. at 7-8.) Stevens-Bratton argues alternatively that the class action waiver provision is substantively and procedurally unconscionable. (Id. at 9-15.)

Stevens-Bratton's first argument is sufficient.  The express holdings and logic underlying the Sixth Circuit's decision in Stevens-Bratton dictate the outcome.

7

When a federal claim implicates the interpretation of state contract law, the forum state's choice-of-law principles apply. Stratton v. Portfolio Recovery Assocs., LLC, 171 F. Supp. 3d 585, 596 (E.D. Ky. 2016), aff'd, 706 F. App'x 840 (6th Cir. 2017) (citing Wise v. Zwicker & Assoc., P.C., 780 F.3d 710, 715 (6th Cir. 2015)). "For claims based in contract law, 'Tennessee follows the rule of lex loci contractus, meaning it presumes that the claims are governed by the jurisdiction in which [the contract] was executed absent a contrary intent.'" Bose v. De La Salud Bea, No. 216CV02308JTFTMP, 2018 WL 8919932, at *7 (W.D. Tenn. Feb. 27, 2018) (subsequent history omitted) (citing Town of Smyrna v. Mun. Gas Auth. of Ga., 723 F.3d 640, 645 (6th Cir. 2013)).

The Service Agreement does not contain a choice-of-law provision. (See ECF No. 22-1.) It does not say where it was executed. (Id.) The parties assume in their briefing that Tennessee law governs its interpretation. The Court assumes the same. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (when there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte).

When resolving disputes about contract interpretation, the Court must "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999) (citation

omitted). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002).

"'[C]ontractual obligations will cease, in the ordinary course, upon termination of the [contract]. Exceptions are determined by contract interpretation. . . . [S]tructural provisions relating to remedies and dispute resolution — for example, an arbitration provision — may in some cases survive in order to enforce duties arising under the contract.'" Hinnant v. Am. Ingenuity, LLC, 554 F. Supp. 2d 576, 583 (E.D. Pa. 2008) (alterations in original) (quoting Litton, 501 U.S. at 207–08). "'[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.'" Rhode Island Council 94 v. Rhode Island, 705 F. Supp. 2d 165, 175 (D.R.I. 2010) (quoting Litton, 501 U.S. at 206).

Parties include a survival clause in a contract when they intend their contractual obligations to survive termination of the agreement. TSI USA, LLC v. Uber Techs., Inc., No. 3:16-CV-2177-L, 2017 WL 106835, at *5 (N.D. Tex. Jan. 11, 2017), aff'd, No. 3:16-CV-2177-L, 2017 WL 3209399 (N.D. Tex. June 19, 2017). Courts have found that class-action waiver provisions survive termination of an agreement when there is express language providing for

survival. See, e.g., Horton v. Dow Jones & Co., Inc., 804 F. App'x 81, 84 (2d Cir. 2020). When there is no applicable survival clause, a provision may "survive termination of the agreement where [the provision is] broadly written to apply to 'any legal dispute' and the dispute involves facts and occurrences that arose before expiration of the contract." Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Envtl. Infrastructure Inc., 439 F. Supp. 3d 407, 435 (E.D. Pa. 2020) (citing TriState HVAC Equip., LLC v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 535 (E.D. Pa. 2010), and Corbin on Contracts § 67.2, at 12 (rev. ed. 2003)); cf. Litton, 501 U.S. at 205-08 (holding that there is a presumption that arbitration clauses survive the termination of an agreement when the subsequent claim "involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement");[1] Huffman v. Hilltop Cos., LLC, 747 F.3d 391, 397–98 (6th Cir. 2014) (holding that arbitration provision survived the termination of a contract, even when that arbitration provision was not specifically mentioned in an otherwise specific survival

---

[1] In Stevens-Bratton, the Sixth Circuit applied Litton, holding that the arbitration provision in the Service Agreement did not survive Stevens-Bratton's cancellation of the Service Agreement. See 675 F. App'x at 567-72. A similar analysis applies here.

10

clause because, "in considering the contract as a whole . . . the parties did not clearly intend for the survival clause to serve as an exhaustive list of the provisions that would survive expiration of the agreement").

It is undisputed that the Service Agreement is a valid agreement. It is undisputed that Stevens-Bratton validly cancelled the Service Agreement around May 15, 2014. It is undisputed that, beginning on January 27, 2015, Stevens-Bratton received telemarketing calls from TruGreen to the telephone number she had provided TruGreen in the Service Agreement. It is undisputed that the Service Agreement does not contain a survival clause in which the parties expressly stated that the class action waiver provision would have post-cancellation effect.

There is no survival clause in the Service Agreement. The plain language of the Service Agreement demonstrates the parties intended that its provisions would not survive cancellation. Planters Gin Co., 78 S.W.3d at 890 ("The intent of the parties is presumed to be that specifically expressed in the body of the contract."); Hinnant, 554 F. Supp. 2d at 583 ("[C]ontractual obligations will cease, in the ordinary course, upon termination of the [contract]."). TruGreen argues that "[t]he Class Action Waiver provision is not limited by time, subject matter, or forum," (ECF No. 78 at 8), and that "[a] plain and sensible reading of the Class Action Waiver is that it must apply to 'any claim, dispute

11

or controversy' even after the parties have terminated their lawn care service relationship," (ECF No. 101 at 3). Although there is language waiving Stevens-Bratton's ability to bring "any claim" in a class action, there is no language in the Service Agreement that her waiver applies post-cancellation. TruGreen seeks to read into the Service Agreement a survival clause that does not exist.

Because the class action waiver is a "provision[] relating to remedies and dispute resolution," Hinnant, 554 F. Supp. 2d at 583, it may survive the cancellation of the Service Agreement if it is broadly written to apply to any legal dispute and the dispute turns on facts and occurrences that arose before the expiration of the contract, Cottman Ave. PRP Grp., 2020 WL 757834, at *21.

The class action waiver provision is not applicable here because the current dispute does not "involve[] facts and occurrences that arose before expiration of the contract." Id. The Sixth Circuit has held that the majority of the material facts and occurrences in the current dispute did not arise before Stevens-Bratton's cancellation of the Service Agreement:

> [T]he memorialization of Stevens-Bratton's lawn care services is irrelevant to this case and thus not material, as her dispute only deals with phone calls and not anything concerning the services TruGreen provided her. Further, usually the agreement itself or the negotiation thereof, is not part of the inquiry of material facts concerning the dispute. Thus, only two of TruGreen's alleged material occurrences before the expiration of the agreement remain: Stevens-Bratton providing her cell phone number and allowing TruGreen to call her regarding "possible future services." However, TruGreen overlooks the other material

12

> occurrences surrounding the dispute; indeed, the occurrences at the heart of the dispute itself — the more than ten phone calls Stevens-Bratton received after the agreement expired. The phone calls are the majority of the material events of the dispute and thus the majority of events occurred <u>after</u> the agreement expired. Absent those phone calls, there is in fact no dispute at all.

<u>Stevens-Bratton</u>, 675 F. App'x at 568–69 (emphasis in original and citations omitted). That conclusion is equally applicable here.

The class action waiver provision may survive the termination of the Service Agreement if TruGreen's right to call Stevens-Bratton "accrued or vested under the agreement, or where, under normal principles of contract interpretation, [TruGreen's right] survives expiration of the remainder of the agreement." <u>Litton</u>, 501 U.S. at 205-08. The Sixth Circuit also directly addressed this issue. The court held that "TruGreen's right to call Stevens-Bratton is not the type of right that we typically view as accruing or vesting under a contract," and "TruGreen's disputed right to call Stevens-Bratton does not survive expiration under the contact under normal principles of contract interpretation." <u>Stevens-Bratton</u>, 675 F. App'x at 569-71. That conclusion is equally applicable here.

The Service Agreement's class action waiver provision is not applicable here.[2] TruGreen has not shown "a clear legal bar against class treatment of the action." 1 McLaughlin on Class Actions

---

[2] Because the class action waiver provision is not applicable, the Court need not address Stevens-Bratton's unconscionability arguments.

13

§ 3:4. TruGreen's Motion to Strike Class Allegations based on the class action waiver provision in the Service Agreement is DENIED.

## V. Conclusion

For the foregoing reasons, TruGreen's Motion to Strike Class Allegations is DENIED.

So ordered this 24th day of July, 2020.

                                     /s/ *Samuel H. Mays, Jr.*
                                     SAMUEL H. MAYS, JR.
                                     UNITED STATES DISTRICT JUDGE